## BELL AND WIFE v. MASON'S ADM'R, ET AL.

1. Where the will of a testator, who died in this State, contained a proviso as follows, viz: " in the event of my wife's marriage after my death, it is my wish that my property shall be divided according to law, and she to receive her lawfnl right of all my effects," it must be understood that the testator referred to the statutes of descent and distribution, as the criterion by which the extent of the wife's interest under the will was to be admeasured; the more especially as the testator was domiciled here, and the real estate of which he died seized, was situated within the State. In such case, the share of the wife will not be increased by the death of one of her three children after the decease of the testator, as the surviving brother and sister are entitled to a preference under the statute, and exclude the mother.

Writ of error to the Orphans' Court of Greene.

THE plaintiffs in error presented their petition to the judge of the Orphans' court, setting forth that Henry S. Mason departed this life in September, 1843, leaving the female petitioner, Catharine E., his widow, and three infant children, to-wit, Sydney, a son, aged about seven years, who died shortly after his father, a daughter named Josephine, aged about five, and Henry, a son, about two years old.

Petitioners further represent that the decedent, at the time of his death, was seized and possessed in fee simple, of the following tracts of land, (all of which are particularly described,) and about thirty-four slaves, of which an inventory has been returned and filed in the orphans' court of Greene, with other personal property, which is particularized, besides money, notes and accounts. It is alledged that the deceased did, in his last sickness, make and publish his will, which was afterwards admitted to probate by the judge of that court, and James Dorroh, who was nominated as the executor, qualified as such, and took upon himself the burthen of its execution; and continued to control and manage the estate, until a short time previously, when he resigned the

trust, and settled his accounts, leaving a balance of cash and good notes in his hands, amounting to about seven thousand five hundred and twenty-two dollars.    This has all been paid over to Robert D. Huckabee, who has been duly appointed by the orphans' court of Greene, administrator *cum testamento annexo* of the estate of the testator, &c.

The petitioners further state, that they intermarried the first of February, 1846, are residing on the plantation, superintending its operations, and desire that the slaves shall be kept and worked there until the growing crop shall be gathered.    But in the mean time they are advised that pursuant to the will they became entitled to a division of the estate immediately upon their marriage.    Petitioners therefore pray that such order and decree, touching the division and distribution of the property, both real and personal, between them and the children, may be made, as the law and the terms of the will require, and that a third part thereof be set apart to them: *Further*, that the administrator *de bonis non cum testamento annexo*, and Josephine and Henry Mason, the infant children, be made parties to the petition, and cited to answer the same ; and a guardian *ad litem* may be appointed for the infants, &c.    The bill, inventory, &c. are regularly exhibited with the petition as a part of it.

The testator, after giving some directions as to his children, property, &c. proceeds thus: "and there shall be no division of my property, until my oldest child shall become of age, or is married ; and in the event of my wife's mariage after my death, it is my wish that my property shall be divided according to law, and she to receive her lawful right of all my effects; the balance to remain in the hands of my executor, until my oldest child becomes of age or marries—at which time I wish my property equally divided between my children then living."

Attaway R. Davis was appointed guardian *ad litem* for the infant distributees.    The administrator *de bonis non*, &c., and the guardian *ad litem* admitted the facts alledged in the petition, but insisted the petitioners were only entitled to a dower estate in the lands, and one fourth of the slaves (in value,) and the other personal property belonging to the es-

tate. Thereupon the court sustained the answers, and decreed accordingly.

H. I. Thornton and W. P. Webb, for the plaintiff in error, insisted that the petitioners were entitled to a third, both of the real and personal estate of the testator, and the orphans' court should have thus decided.

J. B. Clark, for the defendants, contended that the meaning of the will was to be ascertained by a reference to the state of things at the testator's death, and subsequent events could not change it. 1 Ves. Rep. 153 ; 3 Burr. Rep. 1570 ; 18 Johns. Rep. 381 ; 17 Wend. Rep. 401. The law to which the testator referred to regulate the division and distribution of his estate, is the statute law of Alabama. 9 Pet. Rep. 483. The decree conformed to its directions, and is consequently unobjectionable.

COLLIER, C. J.—The cases cited by the counsel for the defendants in error very satisfactorily show, that the meaning and effect of the will become fixed by the testator's death, and do not change with subsequent events. This is the necessary sequence of the principle which declares that a will becomes consummate and irrevocable by death. True, the right of a beneficiary may be enlarged by subsequent occurrences, but this does not result from the will operating *proprio vigore*, but is the consequence of something extrinsic, considered alone, or in connection with the testator's declaration. Thus, in the case at bar, the mother's share of her deceased husband's estate, might have been increased by the death of one of her children, if she had been preferred by the statute to the brother or sister; but if the statute of distribution sentitles the latter to her exclusion, then her rights remain precisely as they did at the testator's death.

In providing that "in the event of my wife's marriage after my death, it is my wish that my property be divided according to law, and she to receive her lawful right of all my effects," we are to understand that the testator referred to the statutes of descent and distribution. Clay's Dig. 168, § 2 ; 172-3, §§ 3, 4. These statutes are the paramount law upon

the subject, and must control and determine the rights of the parties; especially as the testator was domicilled here, and the real estate of which he died seized was situated within this State. De Sobry v. DeLaistre, 2 H. & Johns. R. 191; Dessebats v. Bergnier, 1 Binn. Rep. 336.

By the act passed in 1806, brothers and sisters, in case of intestacy, exclude the father or mother. Clay's Dig. 168, § 2; 191, § 1. The statute of 1812, "concerning dower," provides, that "one third part of all the lands, tenements and hereditaments of which her husband died seized, or possessed, or had before conveyed, whereof said widow had not relinquished her right of dower as heretofore provided for by law, which third part shall be and inure to her proper use, benefit and behoof, in and during the term of her natural life." Clay's Dig. 172, § 2. By the act of 1826, it is enacted, that when a husband dies intestate, or shall make his last will and testament, and not make provision therein for his wife, as expressed in the first section of the act of 1812, she shall be entitled to share in the personal estate in the following manner, viz: "if there be no children, or but one child, she shall be entitled out of the residue left after paying the debts of the deceased, to one half; if there be more than one child, and not more than four, in that case shall be entitled to a child's part; but if there be more than four children, then and in that case she shall be entitled to one-fifth part in absolute right." Clay's Dig. 173, § 4.

It is perfectly clear, considering these several enactments together, that the female petitioner, at the death of her husband, was entitled to but one third of the realty as dower, and one-fourth of the personal estate "in absolute right." This would have been her proportion, had her husband died intestate, and it is not pretended she now occupies a more favorable position, in respect to the extent of her interest, than she would then have done, or if she had dissented from the provision which the will makes for her. We think her rights as to the *quantum* of interest are precisely the same as they would have been in either of the alternatives supposed. One of the children provided for by the will, dying after the testator, his share must go to the brother and sister, to the ex-

43

clusion of the mother. This view is decisive of the cause, and the consequence is, that the decree of the orphans' court is affirmed.